IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| MICHAEL D. PHARES, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civ. No. 08-821-SLR |
| | ) | |
| CONTRACTED MEDICAL SERVICES, | ) | |
| DR. ROGERS, and NURSE | ) | |
| PRACTITIONER IOHMA, | ) | |
| | ) | |
| Defendants. | ) | |

---

Michael D. Phares, Howard R. Young Correctional Institution, Wilmington, Delaware.
Pro Se Plaintiff.

James Edward Drnec, Balick & Balick, LLC, Esquire, Wilmington, Delaware.  Counsel
for Defendants.

---

**MEMORANDUM OPINION**

Dated: August 1ᐧ, 2010
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Michael D. Phares ("plaintiff"), an inmate at the Howard R. Young Correctional Institution, Wilmington, Delaware, filed this lawsuit pursuant to 42 U.S.C. § 1983.[1] He proceeds pro se and was granted leave to proceed in forma pauperis. Presently before the court is defendants' motion for summary judgment. (D.I. 31) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons discussed, the court will grant defendants' motion.

## II. BACKGROUND

Defendants filed a motion for summary judgment and the court entered a briefing schedule. (D.I. 31, 35) Plaintiff did not file a response to the motion.

Plaintiff alleges that subsequent to a hospital stay in 2007, he was not provided with physician ordered treatment when he returned to the correctional institution where he was housed. He also alleges that he did not receive medication and was denied medical care. Plaintiff's complaint states that he fully exhausted his administrative remedies and was promised follow-up treatment that never took place. (D.I. 2, ¶ II.C.) During his deposition, plaintiff testified that he submitted grievances for medical treatment and would provide defense counsel with copies of the grievances, but had not as of the date the motion for summary judgment was filed.[2] (D.I. 32, ex. B26-32)

---

[1]During his February 12, 2010 deposition, plaintiff indicated he anticipated that he would be released "in a couple of days." (D.I. 32, ex. B16) To date, he has not provided the court with a change of address.

[2]Defendants submitted a request for production of documents to plaintiff on June 17, 2009, but he did not respond to the discovery request. Request 12 sought copies of every grievance and/or sick call request plaintiff submitted relevant to his claims. (D.I. 20)

Medical records indicate that plaintiff was hospitalized at Bayhealth Medical Center from January 13 to 17, 2007. Upon discharge his diagnoses were right lower extremity cellulitis, hypotension, renal insufficiency, CHF (i.e., congestive heart failure), and asthma. Discharge instructions included a repeat complete blood count, basic metabolic panel, and iron studies four weeks following discharge. Plaintiff was also placed on several medications. (D.I. 33, ex. C)

Upon his return to prison, plaintiff was seen by medical personnel in 2007 on January 17 and 25, February 1 and 27, April 4, May 4, July 9, and October 2; in 2008 on January 15, March 27, June 25, August 20, November 4, and December 27; and in 2009 on February 11 and May 25. Physician's orders for medication, medical testing, and medical appliances were ordered in 2007 on January 17 and 25, February 1, and April 4; and in 2008 on August 6. (*Id.*) Plaintiff underwent a sleep study on January 26, 2007. A consultation request for bilateral leg Doppler studies was submitted on March 7, 2007. The tests were performed on March 29, 2007. Chest x-rays were performed on September 9, 2008 and January 6, 2009. (*Id.*)

Plaintiff submitted a sick call request on January 29, 2007, and was seen on February 1, 2007. Plaintiff submitted a sick call request on April 1, 2007, and was seen on April 4, 2007. A consultation for a left knee MRI was submitted on April 4, 2007 and an appointment was scheduled for May 25, 2007. Plaintiff submitted a sick call request on April 5, 2007 and was told to await MRI results and then a follow-up visit would take place. Plaintiff testified during his deposition that he received the MRI. (D.I. 32, ex. B30; ex. C)

## III. STANDARD OF REVIEW

The court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that no genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.10 (1986). When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Moreover, a party opposing summary judgment "must present more than just 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." *Podobnik v. United States Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it

has the burden of proof, the moving party is entitled to judgment as a matter of law.

*See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Plaintiff did not file a response to the motion for summary judgment.  The court,

however, will not grant the entry of summary judgment without considering the merits of

the unopposed motion.  *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)

(holding that a district court should not have granted summary judgment solely on the

basis that a motion for summary judgment was not opposed.").

## IV.  DISCUSSION

### A.  Exhaustion of Administrative Remedies

Defendants move for summary judgment on the basis that plaintiff failed to

produce any evidence that he exhausted his administrative remedies.  The Prison

Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to

prison conditions under section 1983 or any other Federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted."  42 U.S.C. § 1997e(a); *see Porter v. Nussle*, 534 U.S. 516,

532 (2002) ("[T]he PLRA's exhaustion requirement applies to all inmate suits about

prison life, whether they involve general circumstances or particular episodes, and

whether they allege excessive force or some other wrong.").

Under § 1997e(a), "an inmate must exhaust [administrative remedies]

irrespective of the forms of relief sought and offered through administrative avenues."

*Booth v. Churner*, 532 U.S. 731, 741 n.6 (2001).  Under *Woodford v. Ngo*, 548 U.S. 81

(2006), exhaustion means proper exhaustion, that is, "a prisoner must complete the

administrative review process in accordance with the applicable procedural rules,

including deadlines, as a precondition to bringing suit in federal court." *Id.* at 88. As long as there is a shared factual basis between the two, perfect overlap between the grievance and a complaint is not required by the PLRA. *Jackson v. Ivans*, 244 F. App'x 508, 513 (3d. Cir. 2007) (not published) (citing *Woodford*, 548 U.S. at 95 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance."). The PLRA does not require the grievance and complaint to be identical because inmates are required to complete the applicable administrative process (such as a grievance procedure) even when seeking a form of relief that the prison cannot provide, so long as the prison can afford some sort of relief. *See Booth v. Churner*, 532 U.S. 731 (2001). "'[P]rison grievance procedures supply the yardstick' for determining what steps are required for exhaustion." *Williams v. Beard*, 482 F.3d 637, 639 (3d Cir. 2007) (quoting *Spruill v. Gillis*, 372 F.3d 218, 231 (3d Cir. 2004)).

Third Circuit case law makes clear that a prisoner must complete the administrative review process in accordance with the applicable procedural rules in order to satisfy the exhaustion requirement of the PLRA. *Nickens v. Department of Corr.*, 277 F. App'x 148, 152 (3d Cir. 2008) (not published) (citing *Williams*, 482 F.3d at 639; *Spruill*, 372 F.3d at 228, 231.) Delaware Department of Correction ("DOC") administrative procedures  provide for a multi-tiered grievance and appeal process. Medical grievances are first forwarded to the medical services staff who attempt an informal resolution of the matter.  If this fails, the grievance goes to the Medical Grievance Committee, which conducts a hearing.  If the matter is still not resolved, the inmate may once again appeal.  DOC Policy 4.4 (revised May 15, 1998).

Defendants argue that plaintiff has failed to produce any evidence that he exhausted his administrative remedies. They note that he did not provide discovery as requested and as he agreed to during his deposition. While the complaint states that plaintiff exhausted his administrative remedies, his testimony merely indicates that he submitted grievances. Defendants move for summary judgment on the issue that plaintiff failed to exhaust his administrative remedies, and plaintiff provided nothing to refute their position. *See Veasey v. Fisher*, 307 F. App'x 614 (3d Cir. 2009) (not published) (affirming summary judgment where inmate presented no evidence in response to defendants' motion for summary judgment that he did not exhaust his administrative remedies.). Indeed, the record is devoid of any evidence of exhaustion.

Plaintiff's failure to properly exhaust is fatal to his claims. "[I]t is beyond the power of this court . . . to excuse compliance with the exhaustion requirement." *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000). Accordingly, the court will grant the motion for summary judgment on the basis of failure to exhaust administrative remedies.

**B. Medical Needs**

Alternatively, defendants contend that summary judgment is appropriate because plaintiff cannot establish a medical needs constitutional violation. The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care. *Estelle v. Gamble*, 429 U.S. 97, 103-105 (1976). However, in order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Estelle v. Gamble*, 429 U.S. at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately

indifferent if he knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official may manifest deliberate indifference by "intentionally denying or delaying access to medical care." *Estelle v. Gamble*, 429 U.S. at 104-05.

"[A] prisoner has no right to choose a specific form of medical treatment," so long as the treatment provided is reasonable. *Harrison v. Barkley*, 219 F.3d 132, 138-140 (2d Cir. 2000). An inmate's claims against members of a prison medical department are not viable under § 1983 where the inmate receives continuing care, but believes that more should be done by way of diagnosis and treatment and maintains that options available to medical personnel were not pursued on the inmate's behalf. *Estelle v. Gamble*, 429 U.S. at 107. Finally, "mere disagreement as to the proper medical treatment" is insufficient to state a constitutional violation. *See Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (citations omitted).

The medical records indicate that plaintiff received medical care on a regular basis, he was a patient of the chronic care clinic, and his conditions were regularly monitored. Additionally, medical testing was ordered and received on several occasions. The evidence of record does not support a finding that defendants were deliberately indifferent to plaintiff's medical needs. Rather, the evidence of record indicates that plaintiff received medical care and treatment on a regular basis.

## V. CONCLUSION

For the reasons discussed above, the court will grant defendants' motion for summary judgment.

An appropriate order will be entered.